UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NUMBER:

KAREN NISSIM, as Personal Representative
of the Estate of AARON W. HIRSCHHORN,
deceased, on behalf of herself and all potential
beneficiaries and heirs,

      Plaintiff,

vs.

YACHTINSURE SERVICES, INC., a
Florida corporation, YACHTINSURE Ltd.,
a foreign corporation, N & J GROUP, LLC,
a Florida corporation d/b/a Private Insurance
Services, CLEAR BLUE SPECIALTY
INSURANCE COMPANY, a foreign corporation,
GLOBAL MARINE INSURANCE AGENCY,
INC., a foreign corporation, and ASPEN
AMERICAN INSURANCE COMPANY, a
foreign corporation.

      Defendants.

_____/

## **COMPLAINT**

The Plaintiff, KAREN NISSIM, as Personal Representative of the Estate of AARON

W. HIRSCHHORN, deceased, on behalf of herself and all potential beneficiaries and heirs files

her complaint against the Defendants, and alleges as follows:

## **INTRODUCTION**

1.      This action arises out of a maritime accident that occurred on March 28, 2021,

involving a 38' Chris Craft Launch Center Console, Hull No. CCBRL146B718, known as

*Caprice* (hereinafter, "the subject vessel"), that resulted in the death of Aaron W. Hirschhorn.

Mr. Hirschhorn is survived by his wife, Karen Nissim, and their three minor children.

2.      On June 4, 2021, Plaintiff Karen Nissim, as Personal Representative of the

Estate of Aaron Hirschhorn, filed a wrongful death action against the owner/operators of the

subject vessel.  Those were Randall J. Harmat; John Cucci, as Personal Representative of the Estate of Eugenio Martinez-Huet, deceased; and 38 Chris Craft Launch, LLC.

3.      At the time of the accident, the subject vessel was insured under two policies of insurance bearing Policy No. ASU00879400 and No. CE91-00061-00 (together, "the Subject Policies").  The named insured on Policy No. ASU00879400 was Eugenio Martinez Huet (hereinafter, the "Huet Policy," attached as Exhibit A).  The named insured on Policy No. CE91-00061-00 was "Chris Craft Launch LLC BO Randy Harmat" (hereinafter, the "Harmat Policy," attached as Exhibit B).  Each of the two policies provided a combined single limit of $500,000.00 at the time of the subject accident.

4.      Mr. Eugenio Martinez Huet was an owner of the Subject Vessel and a Florida resident until his passing on January 20, 2021.  Mr. Harmat was a part-owner of the Subject Vessel, and he was operating the vessel at the time of the Subject Accident,

5.      After the subject accident, a timely request for liability coverage was made pursuant to the Subject Policies.  The insurers on the Subject Policies responded to the insurance requests with denial letters.  The insurers denied coverage for the subject accident, declined to pay any amount on the claim, and refused to defend their insured(s) in litigation. Consequently, the Plaintiff and the Estate of Mr. Huet agreed to enter into binding arbitration for the determination of liability and damages.  As part of the arbitration process, the Plaintiff supplied to counsel for the Estate of Huet information and documents reasonably necessary to evaluate the potential liability and damages in the case.  The amount of damages was evaluated by both counsel for the Plaintiff and counsel for Huet, Harmat, 38 Chris Craft Launch, LLC. During the arbitration process, the Huet Estate contested liability and damages.  The arbitrator considered documentary submissions by both parties and oral presentations from the respective attorneys, including evidence pertaining to liability, written position statements, and oral argument on several debated legal issues.

6. An arbitration award was entered in favor of the Plaintiff (attached as Exhibit C). Following the entry of the Arbitration Award, the Estate of Huet and the Plaintiff entered a Consent Judgment on Plaintiff's Claim against the Estate of Huet (attached as Exhibit D). And the parties agreed to a Covenant Not To Execute On the Judgment (attached as Exhibit E) and an Assignment of the Named Insured's Rights against YachtInsure (attached as Exhibit F).

7. Plaintiff also engaged in lengthy negotiations with counsel for Randy Harmat and 38 Chris Craft Launch, LLC. At the conclusion of these negotiations, and after taking into consideration the risks of litigation and the findings of the arbitrator in the related arbitration against the Huet Estate, Defendants Harmat and 38 Chris Craft Launch, LLC reached a Coblentz agreement whereby Defendants agreed to entry of a consent judgment with Plaintiff in the same form and amount as the consent judgment entered against the Huet Estate. *See* Coblentz Agreement with Harmat and 38 Chris Craft Launch, LLC (attached as Exhibit G); Consent Judgment on Plaintiff's Claim against Harmat and 38 Chris Craft Launch, LLC (attached as Exhibit H).

8. This action includes insurance-related counts asserted against Defendants who are insurance companies and insurance brokers. The underlying tort claims against the Huet Estate, Harmat, and 38 Chris Craft Launch, LLC have been resolved pursuant to the Consent Judgments entered on those claims and attached hereto. Accordingly, the causes of action against the underlying tortfeasors have concluded. This action asserts insurance-related counts against Defendants arising out of the judgments entered against their insureds.

## JURISDICTION, PARTIES, AND VENUE

9. This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs, interest, and attorney's fees, and is therefore within the jurisdictional limits of this Court.

10. The Plaintiff, KAREN NISSIM (hereinafter, "Nissim"), is the surviving spouse of Aaron W. Hirschhorn who passed on March 28, 2021 as a result of being struck by a boat, specifically a 38" Chris Craft Launch Center Console, Hull No. CCBRL146B718, known as *Caprice* (hereinafter, "the Subject Vessel"), while he was riding his electric hydrofoil surfboard.

11. The Plaintiff, Nissim, is the duly appointed Personal Representative of Aaron W. Hirschhorn's Estate, thereby authorizing her to bring this lawsuit.  This action is brought in Plaintiff Nissim's representative capacity on behalf of all potential survivors and/or beneficiaries, including:

    a.  Karen Nissim;

    b.  J. K., minor child;

    c.  E. K., minor child;

    d.  A. K., minor child; and

    e.  The Estate of Aaron W. Hirschhorn.

12. Defendant YACHTINSURE SERVICES, INC. was and is a Florida corporation, with its principal place of business at 401 East Las Olas Boulevard, Fort Lauderdale, Florida 33301, which has in the past and continues to engage in substantial and not isolated business activity on a continuous and systematic basis in the State of Florida.  At all times material, service of process for YachtInsure may be effected by serving its Registered Agent, Yuliya Jolley, 401 East Las Olas Boulevard, Fort Lauderdale, Florida 33301.

13. Defendant YACHTINSURE LTD. was and is a foreign corporation, with its principal place of business in London.

14. Defendant N & J GROUP, LLC was and is a Florida corporation, with its principal place of business at 2015 S.W. 20 Street, Suite 200, Fort Lauderdale, Florida 33315, which has in the past and continues to engage in substantial and not isolated business activity

on a continuous and systematic basis in the State of Florida.  At all times material, service of process for N & J GROUP, LLC may be effected by serving its Registered Agent, Corporate Creations Network, Inc., 801 US Highway 1, North Palm Beach, Florida 33408.

15.     Defendant N & J Group, LLC was the broker of one of the subject insurance policies through its fictitious name Private Insurance Services.

16.     Defendant CLEAR BLUE SPECIALTY INSURANCE COMPANY, was and is a Texas corporation, with its principal place of business in Puerto Rico.  Pursuant to section 48.151(3), Florida Statutes (2021), all authorized insurers (insurance companies) registered to do business in the state of Florida are required to designate the Chief Financial Officer of Florida as their statutory Registered Agent for service of process.  Upon information and belief, it is Yachtinsure's contention that Clear Blue is the principal insurance company on the "Harmat" yacht insurance policy.

17.     At all times material, service of process for CLEAR BLUE SPECIALTY INSURANCE COMPANY may be effected by serving the Chief Financial Officer of Florida, Department of Financial Services, 200 E. Gaines Street, Tallahassee, FL 32399.

18.     Defendant GLOBAL MARINE INSURANCE AGENCY, INC., was and is a foreign corporation, with its principal place of business in Missouri.

19.     Defendant ASPEN AMERICAN INSURANCE COMPANY, was and is a Texas corporation, with its principal place of business in Connecticut.  At all times material, service of process for ASPEN AMERICAN INSURANCE COMPANY may be effected by serving its Registered Agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.  According to the YachtInsure Defendants, Aspen is the principal insurance company on the subject "Huet" yacht insurance policy.

20.     The Court has jurisdiction of the Defendants pursuant to Section 48.193 of the Florida Statutes, as they have in the past and continue to engage in substantial and not isolated business activity on a continuous and systematic basis in the State of Florida.

21.     Upon information or belief, YACHTINSURE SERVICES, INC. and YACHTINSURE LTD. are affiliates and/or in a parent-subsidiary relationship.

22.     According to YachtInsure Ltd.'s website, it has an office called "YachtInsure Ltd" in London and an office called "Yachtinsure Services, Inc" in Ft. Lauderdale, Florida.[1]



Our offices

HEAD OFFICE

**Yachtinsure Ltd**
33 Creechurch Lane,
London,
EC3A 5EB
Tel: +44 20 7469 6190

FT LAUDERDALE OFFICE

**Yachtinsure Services, Inc**
401 E Las Olas Blvd, Suite 1400
Ft Lauderdale,
Florida 33301
Tel: +1 954 332 2412

23.     The Subject Policies were delivered in the State of Florida and intended to provide coverage for the Subject Vessel at a mooring location in Miami Beach, Florida.  The Named Insureds on each of the two Subject Policies (Eugenio Martinez Huet and 38 Chris Craft Launch LLC BO Randy Harmat) were both listed on the Declaration Pages with addresses in Miami, Florida.  The navigational limits on the Subject Policies were the waters of Florida and Bahamas.

---

[1]     https://www.yachtinsure.uk.com/contact-us.

24.   The declaration pages on the Subject Policies provide that the policies were issued by a Fort Lauderdale-based YachtInsure Ltd. and provided that "all claims notices should be reported to: YachtInsure" in Ft. Lauderdale.



*See* Huet Policy (Exhibit A).



| Item 17: | BROKER NAME & ADDRESS:<br>Private Insurance Services<br>2015 SW 20th Street,<br>Suite 200,<br>FORT LAUDERDALE, FLORIDA, 33315,USA. |
|---|---|
| Item 18: | ALL CLAIMS NOTICES SHOULD BE REPORTED TO:<br>Yachtinsure LTD<br>401 E Las Olas Boulevard,<br>Suite 1400, Ft Lauderdale, FL 33301<br>Phone: (001) 0844 445 4790 Email: claims@yachtinsure.us |
| Item 19: | Security:  100% Clear Blue Specialty Insurance Company |

*See* Harmat Policy (Exhibit B).

25.     In other litigation currently pending in the United States District Court for the District of Massachusetts, YachtInsure Services Inc. was sued by and brought a counterclaim against an entity called Transpac Marine LLC, which was an owner of a vessel.  The yacht insurance policy at issue in that case was nearly identical in pertinent part to the subject policy at issue here.  Specifically, the declaration page for that policy listed the insurer as "YACHTINSURE LTD" located in Ft. Lauderdale, it provided that claims should be made to the Ft. Lauderdale YachtInsure entity, and the declaration page was signed by the same YachtInsure personnel as the signatories to the Subject Policy.  *See Transpac Marine LLC v. Yachtinsure Servs. Inc.*, 20-cv-10115, D.E. 1, 1-1, 1-2 (attached as Exhibit I).  In that case, YachtInsure Services Inc. filed an Answer in which it "admit[ted] that it issued the Policy of Insurance[.]"  *See Transpac Marine LLC v. Yachtinsure Servs. Inc.*, 20-cv-10115, D.E. 8 (attached as Exhibit J).  It also filed a motion for summary judgment in which it affirmed that it—YachtInsure Services Inc.—issued the policy.  *See Transpac Marine LLC v. Yachtinsure Servs. Inc.*, 20-cv-10115, D.E. 27 at ¶ 4-7 (attached as Exhibit K).

26.     At all times material, Defendants engaged in substantial and not isolated activity within Florida.  Defendants have continuous and systematic business contacts in Florida that are extensive and pervasive.  Specifically, Defendants operated and did business in Florida with respect to the events giving rise to this lawsuit, including by, among other things:

a.      YachtInsure Services, Inc. is located in Florida, and YachtInsure Ltd. advertises on its website that it maintains a "Ft Lauderdale Office." Indeed, when visitors to YachtInsure Ltd.'s website click on the "Contact Us" link, they are told that "Our Offices" are located in both London and Florida. And the policy materials for the Subject Policy listed an address for YachtInsure at a Ft. Lauderdale office address at 401 E Las Olas Blvd.

b.      Contracting to provide a yacht insurance policy that named as an insured persons and entities whose officers and agents operated and resided in Miami, Florida at the time the negotiations took place and the subject policy was entered into;

c.      Contracting to provide a yacht insurance policy on the subject vessel, which was based in Miami, Florida and would be operated primarily in territories in and around Miami, Florida;

d.      Delivery of the yacht insurance policy in the state of Florida;

e.      Communicating directly with Mr. Huet and his agents, who were primarily responsible for securing insurance for the subject vessel, in Miami, Florida, where he resided;

f.      Communicating directly with Mr. Harmat and 38 Chris Craft Launch LLC, and their agents, who were primarily responsible for securing insurance for the subject vessel, in Miami, Florida, where Mr. Harmat resided;

g.      Providing yacht insurance within a policy territory, which included all territories within the United States of America, including Miami, Florida;

h.      Agreeing to cover accidents and furnish a defense to its insured within a policy territory, which included all territories within the United States of America, including Miami, Florida; and

i.      Providing insurance to cover accidents and furnish a defense to its insureds that foreseeably would take place in Florida, where the boat was moored and operated; and

j.      Engaging in claims-handling in the aftermath of the subject accident in Florida, including by communicating through counsel extensively with Florida-based attorneys and directing claims-handling discussions and negotiations to Florida..

27.      Venue is proper in this Court under section 47.011 of the Florida Statutes, because the cause of action accrued in Miami-Dade County.

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

*The Subject Accident*

28.     On or about, March 28, 2021, the Plaintiff's decedent was fatally injured while riding his electric hydrofoil surfboard in the waters of Miami Beach, Florida after being struck by the Subject Vessel.

29.     The Subject Vessel was owned by Eugenio Martinez Huet and 38 Chris Craft at all times material, including at the time of the accident.

30.     The Subject Vessel was operated and controlled by Harmat at all times material, including at the time of the accident.

31.     In Plaintiff's complaint, she asserted that as a direct and proximate result of the actions and inaction of former-defendants Randy Harmat, 38 Chris Craft Launch LLC, and the Estate of Huet, Plaintiff has been damaged pursuant to the Florida Wrongful Death Act and claimed all damages to which the Estate, the survivors, and/or beneficiaries may be entitled under applicable law, including but not limited to:

    a.     Pain and suffering of the survivors, beneficiaries and heirs of decedent;

    b.     Lost society, companionship, guidance and services of decedent to his survivors, beneficiaries and heirs;

    c.     Loss of support in money or in kind;

    d.     Lost net accumulations;

    e.     Lost value of life;

    f.     Funeral expenses; and/or

    g.     Any and all other damages to which the survivors, beneficiaries, and/or the Estate of Aaron W. Hirschhorn may be entitled to recover under applicable law.

***The Subject Insurance Coverage***

32.     On or about, April 21, 2021, pursuant to Florida Statutes section 627.4.137, Plaintiff requested coverage information from the Estate of Huet, 38 Chris Craft Launch LLC, and Harmat.

33.     On or about April 28, 2021, Plaintiff received the information on the Subject Policies provided by the YachtInsure entities.

34.     On or about April 29, 2021, Plaintiff made a demand for the available policy limits.

35.     On May 19, 2021, correspondence enclosing Coverage Denial Letters were mailed to Plaintiff detailing the coverage defenses raised by the insurers.

36.     Coverage for the Huet Policy claim was denied purportedly due to "an unapproved operator captaining the Vessel at the time of the Incident." Defendant insurance companies, YachtInsure and Aspen, claimed that Harmat, although having ownership interest in the vessel, was not an approved operator under the policy. In addition, the separate Harmat Policy specifically listed "Randy Harmat" as the operator of the Subject Vessel prior to the Subject Accident.

**YACHTINSURE LTD YACHT POLICY DECLARATION**

This is your Declarations page in its entirety and is part of your policy. Please read carefully as it provides a description of your coverage

| Item 1: | Insured Name/ Company: CHRIST CRAFT LAUNCH LLC BO RANDY HARMAT | | | |
| | Insured Address: 480 NE 31st St #2707 , Miami, Miami-Dade, FL, 33137, USA. | | | |
| Item 2: | Policy Period: | Effective: February 12, 2021 | | Expiration: February 12, 2022 |
| | | 12:01 a.m. standard time at the address of the Named Insured as shown above | | |
| Item 3: | Insured Vessel: | Vessel Name: | CAPRICE | Hull ID: | CCBRL146B718 |
| | | 2018 38ft Chris Craft Launch Center Console | | |
| Item 3.1 | Engines | 3 Yamaha 2018 300hp Gasoline engines | | |
| Item 4: | Mooring Location | Miami Beach, Miami-Dade, FL 33139 | | |
| Item 5: | Navigation Limits: | Waters of Florida and the Bahamas (excluding Abaco Islands, Cuba) not exceeding 125 miles offshore. It is warranted the vessel will not be located south of 23 degrees 30 minutes North between 1st June and 15th November both days inclusive. | | |
| Item 6: | Vessel Use: | Private and Pleasure Use only. | | |
| Item 7: | Operators: | Randy Harmat | | |
| Item 8: | Maximum Fare Paying Passengers | 0 | Item 9. Maximum Paid Crew: | 0 |
| Item 10: | Lay-up: | N/A | | |

37.     Nevertheless, YachtInsure and Aspen denied coverage and refused to defend the claim brought against the Estate of Huet on the purported grounds that Harmat was not an authorized operator of the Subject Vessel.

38.     Coverage for the Harmat Policy claim was denied on the purported grounds that there was a "misrepresentation and failure to disclose material information related to a prior loss involving the Vessel."  The purported "misrepresentation" that justified its denial of the claim was the "fail[ure] to answer the question" on the insurance application whether "the Vessel Suffered any Damage or Undergone Repairs in the Last 5 Years":



| 6.   CLAIMS INFORMATION | | | |
|---|---|---|---|
| Any Claims in the Last 10 years? (If **Yes** Please Detail Below) | | | *NO* |
| Any Total Loss? (If **Yes** Please detail below) | | | *NO* |
| Has the Vessel Suffered any Damage or Undergone Repairs in the Last 5 years? | | | |
| Name | Date | Cost of Claim | Details |
| | | | |
| | | | |

**2 | P a g e**          Registered Office 33, Creechurch Lane, London. EC3A 5EB. Registered in England No. 06779208.
Yachtinsure Ltd is an Appointed Representative of International Risk Solutions Ltd which is authorized and regulated by
The Financial Conduct Authority (FCA).

39.     YachtInsure and Clear Blue did not provide information in that letter on the details of the alleged "loss" it claims occurred on January 3, 2021.  Accordingly, Plaintiff will require additional information in discovery to understand the information that the insurers used to determine that there was an alleged misrepresentation and the grounds upon which it denied coverage.

### *The Arbitration Award on Plaintiff's Claim Against the Estate of Huet*

40.     On March 11, 2022, Plaintiff and the Estate of Huet executed an agreement entitled "Settlement Agreement, Assignment of Rights, Consent Judgment, and Covenant not to Execute."  The parties to the agreement exchanged information and documents reasonably necessary to evaluate the potential liability and damages issues in the case and the risks associated with a contested trial.  Eventually, the parties agreed to enter a binding arbitration on both liability and damages, so that a final determined of the damages suffered by the Plaintiff that are attributable to the Estate of Huet could be determined expeditiously by a neutral third

party.  The parties submitted documents and gave oral presentations at an arbitration that took place on April 28, 2022.

41.     On May 18, 2022, the arbitrator entered an award on Plaintiff's claim against the Estate of Huet.  Specifically, the arbitrator determined that Plaintiff had established by a preponderance of the evidence that she was entitled to damages attributable to the Estate of Huet.   The arbitrator also determined there was comparative negligence on the part of Plaintiff's decedent, Aaron Hirschhorn, which was a legal cause of his damage.  The arbitrator determined that the apportionment of fault was 75% on the Estate of Huet and 25% on Plaintiff's decedent Aaron Hirschhorn.  Finally, the Arbitrator made specific damages findings, concluding that there was a total loss of $50,540,000.00 to the Estate of Aaron Hirschhorn; $30,000,000.00 in damages to his widow, Karen Hirschhorn; and $15,000,000.00 in damages to each of his three children.  These figures were adjusted, of course, to reflect the arbitrator's allocation of fault determination.   Accordingly, a consent judgment in the amount of $66,030,000.00, plus interest, was entered against John Cucci, as Personal Representative of the Estate of Eugenio Martinez-Huet.

### *Coblentz Agreement with Harmat and 38 Chris Craft Launch LLC*

42.     On January 25, 2024, after lengthy negotiations and the exchange of information pertinent to the liability and damages issues in the underlying tort action, Plaintiff entered into a Coblentz Agreement with Randy Harmat and 38 Chris Craft Launch LLC. Defendants stipulated to the entry of a consent judgment in favor of the Plaintiff in the same form and amount as the consent judgment against the Huet Estate.  Rather than conducting another arbitration, Defendants were agreeable to the same consent judgment the Huet Estate accepted after likewise disputing liability but conducting arbitration.

43.     The Estate of Huet, Harmat, and 38 Chris Craft Launch LLC have assigned to the Plaintiff any and all claims, rights, benefits or causes of action that they may have against

any insurer, broker, or other party involved in providing, placing, pricing, and/or obtaining insurance coverage for the Subject Vessel.

## LEGAL DOCTRINE

44.     A "*Coblentz* agreement" refers to a negotiated consent judgment "entered into between an insured and a claimant in order to resolve a lawsuit in which the insurer has denied coverage and declined to defend." *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 180 (Fla. 4th DCA 2015).  "Along with establishing liability and fixing damages, the consent judgment allows the insured to assign, to the injured party, any cause of action it had against its insurer in exchange for a release from personal liability." *Id.* (internal quotation marks and citations omitted).

45.     "Where an injured party wishes to recover under a *Coblentz* agreement, the injured party must bring an action against the insurer and prove coverage, wrongful refusal to defend, and that the settlement was reasonable and made in good faith." *Chomat v. N. Ins. Co. of New York*, 919 So. 2d 535, 537 (Fla. 3d DCA 2006) (quoting *Quintana v. Barad,* 528 So.2d 1300, 1301 n. 1. (Fla. 3d DCA 1988)).  The claimant "assume[s] the burden of initially going forward with the production of evidence sufficient to make a prima facie showing of reasonableness and lack of bad faith, even though the ultimate burden of proof will rest upon the carrier." *Id.*

46.     The duty to defend is broad—broader than the issue of existence of coverage. "If the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured."  *Mid-Continent Cas. Co.*, 169 So. 3d at 180–81. "Consequently, 'an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy.'"  *Id.* (quoting *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.,* 695 So.2d 475, 476 (Fla. 3d DCA 1997)).

47.     Florida Statute § 627.409 is a "so-called anti-technical statute," which is "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 898 (11th Cir. 2023) (internal quotation marks and citations omitted).  Florida Statute 627.409 provides:

(1)     Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. . . . [A] misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if the following apply:

(a)     The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.

(b)     If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

(2)     A breach or violation by the insured of a warranty, condition, or provision of a wet marine or transportation insurance policy, contract of insurance, endorsement, or application does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.

48.     "Whether an insured increased the hazard by noncompliance with a warranty is typically a question of fact for the jury." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th at 905.

**COUNT I**
**CLAIM AGAINST YACHTINSURE SERVICES INC. TO ENFORCE THE**
**CONSENT JUDGMENT AGAINST THE ESTATE OF HUET**

49.     The Plaintiff incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

50.     The insurer entities (the YachtInsure entities and Aspen American Insurance Company) wrongfully denied coverage and refused to defend their insured, the Estate of Huet. Coverage should have been afforded for the subject accident.  Under Florida's so-called "anti-technical" statute, which is "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss," the insurer entities had no basis to deny coverage for the Subject Accident.  *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 898 (11th Cir. 2023).  The insurer entities denied their insureds' coverage and refused to defend them on the grounds that "an unapproved operator captaining the Vessel at the time of the Incident."  But these entities knew that the separate Harmat Policy specifically listed "Randy Harmat" as the operator of the Subject Vessel prior to the Subject Accident.  The insurer entities cannot seriously contend that they were unaware that Harmat—a co-owner of the vessel and an operator listed on the separate policy issued by YachtInsure—would operate the subject vessel or that this increased the hazard.  The weak grounds asserted by the insurer entities are not valid grounds to deny coverage or a defense.

51.     In Florida, when a tort victim obtains a judgment against an alleged tortfeasor/insured, the victim may then assert a claim to collect on that judgment from the tortfeasor's insurer.  Such claims have three basic elements that the tort victim/plaintiff has the burden of proving: the existence of coverage, the insurer's wrongful refusal to defend the claim, and the reasonableness of the settlement between the tort victim and the alleged tortfeasor. *See U.S. Fire Ins. Co. v. Hayden Bonded Storage Co*., 930 So.2d 686, 691 (Fla. 4th DCA 2006).

And generally speaking, when the tort victim prevails on such a claim, it is entitled to the full amount of the judgment, rather than to the limits of the policy.

52.     Although it is not a requirement that the insured/tortfeasor formally assign its rights against its insurers to the tort victim, *see Rosen v. Fla. Ins. Guar. Ass'n*, 802 So.2d 291, 294 (Fla. 2001), here, the Estate of Huet nevertheless *did* assign to Plaintiff its rights vis-à-vis its insurer.

53.     Plaintiff and the Estate of Huet entered into a binding arbitration on liability and damages, which resulted in the entry of a consent judgment against the Estate of Huet totaling $66,030,000.00, plus interest.

54.     The issues of liability and the full extent of the Plaintiff's damages have been resolved in the binding arbitration and consent judgment between Plaintiff and the Estate of Huet, and thus Plaintiff's claims against YachtInsure Services Inc. are ripe and have accrued.

55.     YachtInsure Services Inc. issued the Subject Policy, which was in effect at the time of the subject accident and covered the claims brought by Plaintiff against the Estate of Huet.  At all material times, YachtInsure Services Inc. has refused to defend claims against its insureds arising out of the Subject Accident.

56.     Under Florida law, an insurance company "acts at its peril in refusing to defend its insured and will be held responsible for the consequences."  *Fla. Farm Bureau Mut. Ins. Co. v. Rice*, 393 So.2d 552, 556 (Fla. 5th DCA 1980).

57.     YachtInsure Services Inc. owed its insureds a good faith duty to properly handle the claims against its insureds arising from the subject accident.  Among other things, YachtInsure Services Inc. had duties to defend the claims against the Estate of Huet and its other insureds, to properly investigate those claims, and to reasonably attempt to settle those claims within the applicable policy limits.  YachtInsure Services Inc. failed in all of these respects and failed to comply with its good faith obligations toward its insureds.

58.     Plaintiff is entitled to recover the full extent of the excess Consent Judgment.

59.     The amount reflected in the Consent Judgment against the Estate of Huet was reasonable.  As YachtInsure Services Inc. knows, Mr. Hirschhorn was in the prime of his life.  He was 42 years old and had been married to his wife for 10 years.  Together, they were raising three children, ages 5, 7, and 8.  Mr. Hirschhorn was a prominent and successful entrepreneur, who launched several successful multi-million-dollar companies.  Given Mr. Hirschhorn's documented history of business success and lengthy work-life expectancy, the damages to his estate were appropriate.  In addition, the amount of the Consent Judgment was only reached after a thorough and adversarial process that ultimately was submitted to a respected and neutral arbitrator.  The Plaintiff and the Estate of Huet each submitted evidence to the arbitrator pertaining to issues of liability, including the Florida Wildlife Commission Report, written position statements, expert witness declarations, and oral argument on several debated legal issues.  The parties' presentations included evidence on non-economic and economic damages, including testimony from the Plaintiff and data demonstrating non-economic damages awards in comparable cases.  The arbitrator specifically requested and reviewed comparable settlements and verdicts in the manner utilized by federal judges when determining damages in non-jury trials under the Federal Tort Claims Act.  The amount also reflects discounts for the arbitrator's finding of comparative negligence on the part of Plaintiff's decedent.

60.     In short, as a result of YachtInsure's breach of its duties to the Estate of Huet, the Estate of Huet is now exposed to judgments significantly in excess of the insurance policy limits.  Under Florida law, the Plaintiff is entitled to recover the full extent of these excess judgments from Defendant YachtInsure.

WHEREFORE, Plaintiff KAREN NISSIM, as Personal Representative of the Estate of AARON  W.  HIRSCHHORN,  deceased,  demands  judgment  against  YACHTINSURE

SERVICES, INC. for all damages available, including the full extent of the Consent Judgment entered against the Estate of Huet.  Plaintiff requests a trial by jury.

## COUNT II
## CLAIM AGAINST YACHTINSURE LTD TO ENFORCE THE CONSENT JUDGMENT AGAINST THE ESTATE OF HUET

61.     The Plaintiff incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

62.     The insurer entities (the YachtInsure entities and Aspen American Insurance Company) wrongfully denied coverage and refused to defend their insured, the Estate of Huet. Coverage should have been afforded for the subject accident.  Under Florida's so-called "anti-technical" statute, which is "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss," the insurer entities had no basis to deny coverage for the Subject Accident.  *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 898 (11th Cir. 2023).  The insurer entities denied their insureds' coverage and refused to defend them on the grounds that "an unapproved operator captaining the Vessel at the time of the Incident."  But these entities knew that the separate Harmat Policy specifically listed "Randy Harmat" as the operator of the Subject Vessel prior to the Subject Accident.  The insurer entities cannot seriously contend that they were unaware that Harmat—a co-owner of the vessel and an operator listed on the separate policy issued by YachtInsure—would operate the subject vessel or that this increased the hazard.  The weak grounds asserted by the insurer entities are not valid grounds to deny coverage or a defense.

63.     In Florida, when a tort victim obtains a judgment against an alleged tortfeasor/insured, the victim may then assert a claim to collect on that judgment from the tortfeasor's insurer.  Such claims have three basic elements that the tort victim/plaintiff has the burden of proving: the existence of coverage, the insurer's wrongful refusal to defend the claim, and the reasonableness of the settlement between the tort victim and the alleged tortfeasor. *See*

*U.S. Fire Ins. Co. v. Hayden Bonded Storage Co*., 930 So.2d 686, 691 (Fla. 4th DCA 2006). And generally speaking, when the tort victim prevails on such a claim, it is entitled to the full amount of the judgment, rather than to the limits of the policy.

64.     Although it is not a requirement that the insured/tortfeasor formally assign its rights against its insurers to the tort victim, *see Rosen v. Fla. Ins. Guar. Ass'n*, 802 So.2d 291, 294 (Fla. 2001), here, the Estate of Huet nevertheless *did* assign to Plaintiff its rights vis-à-vis its insurer.

65.     Plaintiff and the Estate of Huet entered into a binding arbitration on liability and damages, which resulted in the entry of a consent judgment against the Estate of Huet totaling $66,030,000.00, plus interest.

66.     The issues of liability and the full extent of the Plaintiff's damages have been resolved in the binding arbitration and consent judgment, and thus Plaintiff's claims against YachtInsure are ripe and have accrued.

67.     At all material times, YachtInsure Ltd. has refused to defend claims against its insureds arising out of the Subject Accident.

68.     Under Florida law, an insurance company "acts at its peril in refusing to defend its insured and will be held responsible for the consequences." *Fla. Farm Bureau Mut. Ins. Co. v. Rice*, 393 So.2d 552, 556 (Fla. 5th DCA 1980).

69.     YachtInsure Ltd. owed its insureds a good faith duty to properly handle the claims against its insureds arising from the subject accident.  Among other things, YachtInsure Ltd. had duties to defend the claims against the Estate of Huet and its other insureds, to properly investigate those claims, and to reasonably attempt to settle those claims within the applicable policy limits.  YachtInsure Ltd. failed in all of these respects and failed to comply with its good faith obligations toward its insureds.

70.     Plaintiff is entitled to recover the full extent of the excess Consent Judgment.

71. The amount reflected in the Consent Judgment against the Estate of Huet was reasonable. As YachtInsure Ltd. knows, Mr. Hirschhorn was in the prime of his life. He was 42 years old and had been married to his wife for 10 years. Together, they were raising three children, ages 5, 7, and 8. Mr. Hirschhorn was a prominent and successful entrepreneur, who launched several successful multi-million-dollar companies. Given Mr. Hirschhorn's documented history of business success and lengthy work-life expectancy, the damages to his estate were appropriate. In addition, the amount of the Consent Judgment was only reached after a thorough and adversarial process that ultimately was submitted to a respected and neutral arbitrator. The Plaintiff and the Estate of Huet each submitted evidence to the arbitrator pertaining to issues of liability, including the Florida Wildlife Commission Report, written position statements, expert witness declarations, and oral argument on several debated legal issues. The parties' presentations included evidence on non-economic and economic damages, including testimony from the Plaintiff and data demonstrating non-economic damages awards in comparable cases. The arbitrator specifically requested and reviewed comparable settlements and verdicts in the manner utilized by federal judges when determining damages in non-jury trials under the Federal Tort Claims Act. The amount also reflects discounts for the arbitrator's finding of comparative negligence on the part of Plaintiff's decedent.

72. In short, as a result of YachtInsure Ltd's breach of its duties to the Estate of Huet, the Estate of Huet is now exposed to judgments significantly in excess of the insurance policy limits. Under Florida law, the Plaintiff is entitled to recover the full extent of these excess judgments from Defendant YachtInsure Ltd.

WHEREFORE, Plaintiff KAREN NISSIM, as Personal Representative of the Estate of AARON W. HIRSCHHORN, deceased, demands judgment against YACHTINSURE LTD for all damages available, including the full extent of the Consent Judgment entered against the Estate of Huet. Plaintiff requests a trial by jury.

**COUNT III**
**CLAIM AGAINST ASPEN AMERICAN INSURANCE COMPANY TO ENFORCE**
**THE CONSENT JUDGMENT AGAINST THE ESTATE OF HUET**

73.     The Plaintiff incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

74.     The insurer entities (the YachtInsure entities and Aspen American Insurance Company) wrongfully denied coverage and refused to defend their insured, the Estate of Huet. Coverage should have been afforded for the subject accident.  Under Florida's so-called "anti-technical" statute, which is "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss," the insurer entities had no basis to deny coverage for the Subject Accident.  *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 898 (11th Cir. 2023).  The insurer entities denied their insureds' coverage and refused to defend them on the grounds that "an unapproved operator captaining the Vessel at the time of the Incident."  But these entities knew that the separate Harmat Policy specifically listed "Randy Harmat" as the operator of the Subject Vessel prior to the Subject Accident.  The insurer entities cannot seriously contend that they were unaware that Harmat—a co-owner of the vessel and an operator listed on the separate policy issued by YachtInsure—would operate the subject vessel or that this increased the hazard.  The weak grounds asserted by the insurer entities are not valid grounds to deny coverage or a defense.

75.     In Florida, when a tort victim obtains a judgment against an alleged tortfeasor/insured, the victim may then assert a claim to collect on that judgment from the tortfeasor's insurer.  Such claims have three basic elements that the tort victim/plaintiff has the burden of proving: the existence of coverage, the insurer's wrongful refusal to defend the claim, and the reasonableness of the settlement between the tort victim and the alleged tortfeasor. *See U.S. Fire Ins. Co. v. Hayden Bonded Storage Co*., 930 So.2d 686, 691 (Fla. 4th DCA 2006).

And generally speaking, when the tort victim prevails on such a claim, it is entitled to the full amount of the judgment, rather than to the limits of the policy.

76.     Although it is not a requirement that the insured/tortfeasor formally assign its rights against its insurers to the tort victim, *see Rosen v. Fla. Ins. Guar. Ass'n*, 802 So.2d 291, 294 (Fla. 2001), here, the Estate of Huet nevertheless *did* assign to Plaintiff its rights vis-à-vis its insurer.

77.     Plaintiff and the Estate of Huet entered into a binding arbitration on liability and damages, which resulted in the entry of a consent judgment against the Estate of Huet totaling $66,030,000.00, plus interest.

78.     The issues of liability and the full extent of the Plaintiff's damages have been resolved in the binding arbitration and consent judgment, and thus Plaintiff's claims against YachtInsure are ripe and have accrued.

79.     At all material times, Aspen American Insurance Company has refused to defend claims against its insureds arising out of the Subject Accident.

80.     Under Florida law, an insurance company "acts at its peril in refusing to defend its insured and will be held responsible for the consequences." *Fla. Farm Bureau Mut. Ins. Co. v. Rice*, 393 So.2d 552, 556 (Fla. 5th DCA 1980).

81.     Aspen American Insurance Company owed its insureds a good faith duty to properly handle the claims against its insureds arising from the subject accident.  Among other things, Aspen American Insurance Company had duties to defend the claims against the Estate of Huet and its other insureds, to properly investigate those claims, and to reasonably attempt to settle those claims within the applicable policy limits.  Aspen American Insurance Company failed in all of these respects and failed to comply with its good faith obligations toward its insureds.

82.     Plaintiff is entitled to recover the full extent of the excess Consent Judgment.

83.     The amount reflected in the Consent Judgment against the Estate of Huet was reasonable.  As Aspen American Insurance Company knows, Mr. Hirschhorn was in the prime of his life.  He was 42 years old and had been married to his wife for 10 years.  Together, they were raising three children, ages 5, 7, and 8.  Mr. Hirschhorn was a prominent and successful entrepreneur, who launched several successful multi-million-dollar companies.  Given Mr. Hirschhorn's documented history of business success and lengthy work-life expectancy, the damages to his estate were appropriate.  In addition, the amount of the Consent Judgment was only reached after a thorough and adversarial process that ultimately was submitted to a respected and neutral arbitrator.  The Plaintiff and the Estate of Huet each submitted evidence to the arbitrator pertaining to issues of liability, including the Florida Wildlife Commission Report, written position statements, expert witness declarations, and oral argument on several debated legal issues.  The parties' presentations included evidence on non-economic and economic damages, including testimony from the Plaintiff and data demonstrating non-economic damages awards in comparable cases.  The arbitrator specifically requested and reviewed comparable settlements and verdicts in the manner utilized by federal judges when determining damages in non-jury trials under the Federal Tort Claims Act.  The amount also reflects discounts for the arbitrator's finding of comparative negligence on the part of Plaintiff's decedent.

84.     In short, as a result of Aspen American Insurance Company's breach of its duties to the Estate of Huet, the Estate of Huet is now exposed to judgments significantly in excess of the insurance policy limits.  Under Florida law, the Plaintiff is entitled to recover the full extent of these excess judgments from Defendant Aspen American Insurance Company.

WHEREFORE, Plaintiff KAREN NISSIM, as Personal Representative of the Estate of AARON W. HIRSCHHORN, deceased, demands judgment against ASPEN AMERICAN

INSURANCE COMPANY for all damages available, including the full extent of the Consent

Judgment entered against the Estate of Huet.  Plaintiff requests a trial by jury.

**COUNT IV**
**CLAIM AGAINST YACHTINSURE LTD. TO ENFORCE THE CONSENT**
**JUDGMENT AGAINST HARMAT AND 38 CHRIS CRAFT LAUNCH, LLC**

85.     The Plaintiff incorporates by reference paragraphs 1 through 48 as though fully

set forth herein.

86.     The insurer entities (the YachtInsure entities and Clear Blue Specialty Insurance

Company) wrongfully denied coverage and refused to defend their insureds, Harmat and 38

Chris Craft LLC.  Coverage should have been afforded for the subject accident.  Under

Florida's so-called "anti-technical" statute, which is "designed to prevent the insurer from

avoiding coverage on a technical omission playing no part in the loss," the insurer entities had

no basis to deny coverage for the Subject Accident.  *Travelers Prop. Cas. Co. of Am. v. Ocean*

*Reef Charters LLC*, 71 F.4th 894, 898 (11th Cir. 2023).  The insureds' "failure" in the insurance

application to answer the question about whether the boat had undergone any repairs in the last

5 years was not fraudulent, it played absolutely no role in the loss or in the insurers' hazard

assessment.

87.     In Florida, when a tort victim obtains a judgment against an alleged

tortfeasor/insured, the victim may then assert a claim to collect on that judgment from the

tortfeasor's insurer.  Such claims have three basic elements that the tort victim/plaintiff has the

burden of proving: the existence of coverage, the insurer's wrongful refusal to defend the claim,

and the reasonableness of the settlement between the tort victim and the alleged tortfeasor. *See*

*U.S. Fire Ins. Co. v. Hayden Bonded Storage Co*., 930 So.2d 686, 691 (Fla. 4th DCA 2006).

And generally speaking, when the tort victim prevails on such a claim, it is entitled to the full

amount of the judgment, rather than to the limits of the policy.

88.     Although it is not a requirement that the insured/tortfeasor formally assign its rights against its insurers to the tort victim, *see Rosen v. Fla. Ins. Guar. Ass'n*, 802 So.2d 291, 294 (Fla. 2001), here, Harmat and 38 Chris Craft LLC nevertheless *did* assign to Plaintiff their rights vis-à-vis its insurer.

89.     Plaintiff and the Estate of Huet entered into a binding arbitration on liability and damages, which resulted in the entry of a consent judgment against the Estate of Huet totaling $66,030,000.00, plus interest.

90.     After the conclusion of arbitration and entry of an award in favor of Plaintiff, Plaintiff engaged in lengthy negotiations with counsel for Randy Harmat and 38 Chris Craft Launch, LLC.  At the conclusion of these negotiations, and after taking into consideration the risks of litigation and the findings of the arbitrator in the related arbitration against the Huet Estate, Defendants Harmat and 38 Chris Craft Launch, LLC reached a Coblentz agreement whereby Defendants agreed to entry of a consent judgment with Plaintiff in the same form and amount as the consent judgment entered against the Huet Estate.

91.     The issues of liability and the full extent of the Plaintiff's damages have been resolved in the binding arbitration and consent judgment, and thus Plaintiff's claims against YachtInsure are ripe and have accrued.

92.     At all material times, YachtInsure Ltd. has refused to defend claims against its insureds arising out of the Subject Accident.

93.     Under Florida law, an insurance company "acts at its peril in refusing to defend its insured and will be held responsible for the consequences." *Fla. Farm Bureau Mut. Ins. Co. v. Rice*, 393 So.2d 552, 556 (Fla. 5th DCA 1980).

94.     YachtInsure Ltd. owed its insureds a good faith duty to properly handle the claims against its insureds arising from the subject accident.  Among other things, YachtInsure Ltd. had duties to defend the claims against its insureds, to properly investigate those claims,

and to reasonably attempt to settle those claims within the applicable policy limits. YachtInsure Ltd. failed in all of these respects and failed to comply with its good faith obligations toward its insureds.

95.     Plaintiff is entitled to recover the full extent of the excess Consent Judgment.

96.     The amount reflected in the Consent Judgment against Harmat and 38 Chris Craft LLC was reasonable. As YachtInsure Ltd. knows, Mr. Hirschhorn was in the prime of his life. He was 42 years old and had been married to his wife for 10 years. Together, they were raising three children, ages 5, 7, and 8. Mr. Hirschhorn was a prominent and successful entrepreneur, who launched several successful multi-million-dollar companies. Given Mr. Hirschhorn's documented history of business success and lengthy work-life expectancy, the damages to his estate were appropriate. In addition, the amount of the Consent Judgment was only reached after a thorough and adversarial process that ultimately was submitted to a respected and neutral arbitrator. The Plaintiff and the Estate of Huet each submitted evidence to the arbitrator pertaining to issues of liability, including the Florida Wildlife Commission Report, written position statements, expert witness declarations, and oral argument on several debated legal issues. The parties' presentations included evidence on non-economic and economic damages, including testimony from the Plaintiff and data demonstrating non-economic damages awards in comparable cases. The arbitrator specifically requested and reviewed comparable settlements and verdicts in the manner utilized by federal judges when determining damages in non-jury trials under the Federal Tort Claims Act. The amount also reflects discounts for the arbitrator's finding of comparative negligence on the part of Plaintiff's decedent. These findings are equally applicable to Plaintiff's claims against Harmat and 38 Chris Craft LLC.

97.     In short, as a result of YachtInsure Ltd's breach of its duties to Harmat and 38 Chris Craft LLC, those insureds are now exposed to judgments significantly in excess of the

insurance policy limits.  Under Florida law, the Plaintiff is entitled to recover the full extent of these excess judgments from Defendant YachtInsure Ltd.

WHEREFORE, Plaintiff KAREN NISSIM, as Personal Representative of the Estate of AARON W. HIRSCHHORN, deceased, demands judgment against YACHTINSURE LTD for all damages available, including the full extent of the Consent Judgment entered against Harmat and 38 Chris Craft LLC.  Plaintiff requests a trial by jury.

## COUNT V
### CLAIM AGAINST YACHTINSURE SERVICES INC. TO ENFORCE THE CONSENT JUDGMENT AGAINST HARMAT AND 38 CHRIS CRAFT LAUNCH, LLC

98.     The Plaintiff incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

99.     The insurer entities (the YachtInsure entities and Clear Blue Specialty Insurance Company) wrongfully denied coverage and refused to defend their insureds, Harmat and 38 Chris Craft LLC.  Coverage should have been afforded for the subject accident.  Under Florida's so-called "anti-technical" statute, which is "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss," the insurer entities had no basis to deny coverage for the Subject Accident.  *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 898 (11th Cir. 2023).  The insureds' "failure" in the insurance application to answer the question about whether the boat had undergone any repairs in the last 5 years was not fraudulent, it played absolutely no role in the loss or in the insurers' hazard assessment.

100.    In Florida, when a tort victim obtains a judgment against an alleged tortfeasor/insured, the victim may then assert a claim to collect on that judgment from the tortfeasor's insurer.  Such claims have three basic elements that the tort victim/plaintiff has the burden of proving: the existence of coverage, the insurer's wrongful refusal to defend the claim, and the reasonableness of the settlement between the tort victim and the alleged tortfeasor.  *See*

*U.S. Fire Ins. Co. v. Hayden Bonded Storage Co*., 930 So.2d 686, 691 (Fla. 4th DCA 2006). And generally speaking, when the tort victim prevails on such a claim, it is entitled to the full amount of the judgment, rather than to the limits of the policy.

101.    Although it is not a requirement that the insured/tortfeasor formally assign its rights against its insurers to the tort victim, *see Rosen v. Fla. Ins. Guar. Ass'n*, 802 So.2d 291, 294 (Fla. 2001), here, Harmat and 38 Chris Craft LLC nevertheless *did* assign to Plaintiff their rights vis-à-vis their insurer.

102.    Plaintiff and the Estate of Huet entered into a binding arbitration on liability and damages, which resulted in the entry of a consent judgment against the Estate of Huet totaling $66,030,000.00, plus interest.

103.    After the conclusion of arbitration and entry of an award in favor of Plaintiff, Plaintiff engaged in lengthy negotiations with counsel for Randy Harmat and 38 Chris Craft Launch, LLC.  At the conclusion of these negotiations, and after taking into consideration the risks of litigation and the findings of the arbitrator in the related arbitration against the Huet Estate, Defendants Harmat and 38 Chris Craft Launch, LLC reached a Coblentz agreement whereby Defendants agreed to entry of a consent judgment with Plaintiff in the same form and amount as the consent judgment entered against the Huet Estate.

104.    The issues of liability and the full extent of the Plaintiff's damages have been resolved in the binding arbitration and consent judgment, and thus Plaintiff's claims against YachtInsure are ripe and have accrued.

105.    At all material times, YachtInsure Services Inc. has refused to defend claims against its insureds arising out of the Subject Accident.

106.    Under Florida law, an insurance company "acts at its peril in refusing to defend its insured and will be held responsible for the consequences."  *Fla. Farm Bureau Mut. Ins. Co. v. Rice*, 393 So.2d 552, 556 (Fla. 5th DCA 1980).

107.    YachtInsure Services Inc. owed its insureds a good faith duty to properly handle the claims against its insureds arising from the subject accident.   Among other things, YachtInsure Services inc. had duties to defend the claims against its insureds, to properly investigate those claims, and to reasonably attempt to settle those claims within the applicable policy limits.  YachtInsure Services Inc. failed in all of these respects and failed to comply with its good faith obligations toward its insureds.

108.    Plaintiff is entitled to recover the full extent of the excess Consent Judgment.

109.    The amount reflected in the Consent Judgment against Harmat and 38 Chris Craft LLC was reasonable.  As YachtInsure knows, Mr. Hirschhorn was in the prime of his life.  He was 42 years old and had been married to his wife for 10 years.  Together, they were raising three children, ages 5, 7, and 8.  Mr. Hirschhorn was a prominent and successful entrepreneur, who launched several successful multi-million-dollar companies.  Given Mr. Hirschhorn's documented history of business success and lengthy work-life expectancy, the damages to his estate were appropriate.  In addition, the amount of the Consent Judgment was only reached after a thorough and adversarial process that ultimately was submitted to a respected and neutral arbitrator.  The Plaintiff and the Estate of Huet each submitted evidence to the arbitrator pertaining to issues of liability, including the Florida Wildlife Commission Report, written position statements, expert witness declarations, and oral argument on several debated legal issues.  The parties' presentations included evidence on non-economic and economic damages, including testimony from the Plaintiff and data demonstrating non-economic damages awards in comparable cases.  The arbitrator specifically requested and reviewed comparable settlements and verdicts in the manner utilized by federal judges when determining damages in non-jury trials under the Federal Tort Claims Act.  The amount also reflects discounts for the arbitrator's finding of comparative negligence on the part of Plaintiff's

decedent.  These findings are equally applicable to Plaintiff's claims against Harmat and 38 Chris Craft LLC.

110.     In short, as a result of YachtInsure's breach of its duties to Harmat and 38 Chris Craft LLC, those insureds are now exposed to judgments significantly in excess of the insurance policy limits.  Under Florida law, the Plaintiff is entitled to recover the full extent of these excess judgments from Defendant YachtInsure Services Inc.

WHEREFORE, Plaintiff KAREN NISSIM, as Personal Representative of the Estate of AARON W. HIRSCHHORN, deceased, demands judgment against YACHTINSURE SERVICES INC. for all damages available, including the full extent of the Consent Judgment entered against Harmat and 38 Chris Craft LLC.  Plaintiff requests a trial by jury.

**COUNT VI**
**CLAIM AGAINST CLEAR BLUE SPECIALTY INSURANCE COMPANY TO**
**ENFORCE THE CONSENT JUDGMENT AGAINST HARMAT AND 38 CHRIS**
**CRAFT LAUNCH, LLC**

111.     The Plaintiff incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

112.     The insurer entities (the YachtInsure entities and Clear Blue Specialty Insurance Company) wrongfully denied coverage and refused to defend their insureds, Harmat and 38 Chris Craft LLC.  Coverage should have been afforded for the subject accident.  Under Florida's so-called "anti-technical" statute, which is "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss," the insurer entities had no basis to deny coverage for the Subject Accident.  *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 898 (11th Cir. 2023).  The insureds' "failure" in the insurance application to answer the question about whether the boat had undergone any repairs in the last 5 years was not fraudulent, it played absolutely no role in the loss or in the insurers' hazard assessment.

113.     In Florida, when a tort victim obtains a judgment against an alleged tortfeasor/insured, the victim may then assert a claim to collect on that judgment from the tortfeasor's insurer.  Such claims have three basic elements that the tort victim/plaintiff has the burden of proving: the existence of coverage, the insurer's wrongful refusal to defend the claim, and the reasonableness of the settlement between the tort victim and the alleged tortfeasor. *See U.S. Fire Ins. Co. v. Hayden Bonded Storage Co*., 930 So.2d 686, 691 (Fla. 4th DCA 2006). And generally speaking, when the tort victim prevails on such a claim, it is entitled to the full amount of the judgment, rather than to the limits of the policy.

114.     Although it is not a requirement that the insured/tortfeasor formally assign its rights against its insurers to the tort victim, *see Rosen v. Fla. Ins. Guar. Ass'n*, 802 So.2d 291, 294 (Fla. 2001), here, Harmat and 38 Chris Craft LLC nevertheless *did* assign to Plaintiff their rights vis-à-vis their insurer.

115.     Plaintiff and the Estate of Huet entered into a binding arbitration on liability and damages, which resulted in the entry of a consent judgment against the Estate of Huet totaling $66,030,000.00, plus interest.

116.     After the conclusion of arbitration and entry of an award in favor of Plaintiff, Plaintiff engaged in lengthy negotiations with counsel for Randy Harmat and 38 Chris Craft Launch, LLC.  At the conclusion of these negotiations, and after taking into consideration the risks of litigation and the findings of the arbitrator in the related arbitration against the Huet Estate, Defendants Harmat and 38 Chris Craft Launch, LLC reached a Coblentz agreement whereby Defendants agreed to entry of a consent judgment with Plaintiff in the same form and amount as the consent judgment entered against the Huet Estate.

117.     The issues of liability and the full extent of the Plaintiff's damages have been resolved in the binding arbitration and consent judgment, and thus Plaintiff's claims against Clear Blue are ripe and have accrued.

118.    At all material times, Clear Blue has refused to defend claims against its insureds arising out of the Subject Accident.

119.    Under Florida law, an insurance company "acts at its peril in refusing to defend its insured and will be held responsible for the consequences." *Fla. Farm Bureau Mut. Ins. Co. v. Rice*, 393 So.2d 552, 556 (Fla. 5th DCA 1980).

120.    Clear Blue owed its insureds a good faith duty to properly handle the claims against its insureds arising from the subject accident.  Among other things, Clear Blue had duties to defend the claims against its insureds, to properly investigate those claims, and to reasonably attempt to settle those claims within the applicable policy limits.  Clear Blue failed in all of these respects and failed to comply with its good faith obligations toward its insureds.

121.    Plaintiff is entitled to recover the full extent of the excess Consent Judgment.

122.    The amount reflected in the Consent Judgment against Harmat and 38 Chris Craft LLC was reasonable.  As Clear Blue knows, Mr. Hirschhorn was in the prime of his life.  He was 42 years old and had been married to his wife for 10 years.  Together, they were raising three children, ages 5, 7, and 8.  Mr. Hirschhorn was a prominent and successful entrepreneur, who launched several successful multi-million-dollar companies.  Given Mr. Hirschhorn's documented history of business success and lengthy work-life expectancy, the damages to his estate were appropriate.  In addition, the amount of the Consent Judgment was only reached after a thorough and adversarial process that ultimately was submitted to a respected and neutral arbitrator.  The Plaintiff and the Estate of Huet each submitted evidence to the arbitrator pertaining to issues of liability, including the Florida Wildlife Commission Report, written position statements, expert witness declarations, and oral argument on several debated legal issues.  The parties' presentations included evidence on non-economic and economic damages, including testimony from the Plaintiff and data demonstrating non-economic damages awards in comparable cases.    The arbitrator specifically requested and reviewed comparable

settlements and verdicts in the manner utilized by federal judges when determining damages in non-jury trials under the Federal Tort Claims Act. The amount also reflects discounts for the arbitrator's finding of comparative negligence on the part of Plaintiff's decedent. These findings are equally applicable to Plaintiff's claims against Harmat and 38 Chris Craft LLC.

123.    In short, as a result of Clear Blue's breach of its duties to Harmat and 38 Chris Craft LLC, those insureds are now exposed to judgments significantly in excess of the insurance policy limits. Under Florida law, the Plaintiff is entitled to recover the full extent of these excess judgments from Defendant Clear Blue.

WHEREFORE, Plaintiff KAREN NISSIM, as Personal Representative of the Estate of AARON W. HIRSCHHORN, deceased, demands judgment against Clear Blue Specialty Insurance Company for all damages available, including the full extent of the Consent Judgment entered against Harmat and 38 Chris Craft LLC. Plaintiff requests a trial by jury.

<u>**COUNT VII**</u>
<u>**PROFESSIONAL NEGLIGENCE CLAIM AGAINST N & J GROUP, LLC ARISING OUT OF PLACEMENT OF HARMAT POLICY**</u>

124.    The Plaintiff incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

125.    This claim is made in the alternative. As explained above, Plaintiff alleges that the insurer entities (the YachtInsure entities and Clear Blue Specialty Insurance Company) wrongfully denied coverage and refused to defend their insureds, Harmat and 38 Chris Craft LLC. Coverage should have been afforded for the subject accident. Under Florida's so-called "anti-technical" statute, which is "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss," the insurer entities had no basis to deny coverage for the Subject Accident. *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 898 (11th Cir. 2023). The insureds' "failure" in the insurance application to answer the question about whether the boat had undergone any repairs in the last 5 years

played absolutely no role in the loss or in the hazard assessment by the insurers.  That said, in the event that coverage is denied based on purported "failures" to answer questions in the insurance application, that denial of coverage is due to failures on the part of the insureds' insurance broker.

126.    At all times material, N & J GROUP, LLC, in its capacity as an insurance broker, was responsible for procuring sufficient and adequate yacht insurance for Harmat and 38 Chris Craft LLC.  As an insurance broker, N & J Group had a duty to ensure that Harmat and 38 Chris Craft LLC had the appropriate insurance coverage and that its application was submitted to ensure the existence of coverage.  *See*, *e.g.*, *Caplan v. La Chance*, 219 So.2d 89, 90 (Fla. 3d DCA 1969). *See also Frenz Enter., Inc.*, 696 So.2d at 872 (third party may seek to recover against tortfeasor's insurance broker after being successful in its action against tortfeasor).  This duty is not derived solely from N & J Group's contractual obligations to Harmat and 38 Chris Craft LLC, but is also a duty sounding in tort, and arising from N & J Group's undertaking to procure insurance. *See Sheridan v. Greenberg*, 391 So.2d 234 (Fla. 3d DCA 1980).  Indeed, under Florida's common law, insurance brokers owe insureds a fiduciary duty. *See Southtrust Bank v. Exp. Ins. Serv., Inc.*, 190 F. Supp. 2d 1304, 1308 (M.D. Fla. 2002); *Wachovia Ins. Servs., Inc. v. Toomey*, 994 So.2d 980, 989 (Fla. 2008).  Moreover, Florida law recognizes that a third-party victim may assert a cause of action *directly* against a tortfeasor's insurance broker. *See Hamer v. Kahn*, 404 So.2d 847 (Fla. 4th DCA 1981); *see also Frenz Enter., Inc.*, 696 So.2d at 872 (third party may seek to recover against tortfeasor's insurance broker after being successful in its action against tortfeasor).

127.    In the Coblentz Agreement, Harmat and 38 Chris Craft LLC assigned all claims they might have against any "broker" involved in placing the subject yacht insurance, including N& J Group, to Plaintiff in this action.

128.   N & J Group knew or reasonably should have foreseen that the failure to exercise reasonable care in any of its duties as an insurance broker to procure insurance on behalf of its insureds created a broad zone of risk.

129.   N & J Group knew or reasonably should have known that the answer "yes" was apparently erased—but still easily visible—from the application question "Has the Vessel Suffered any Damage or Undergone Repairs in the Last 5 years?"



130.   Upon information in belief, N & J Group advised and participated in the completion of the insurance application, and failed to advise its insured properly regarding the completion of the application.  N & J Group did not properly explain what information needed to be provided in this section of the application or its effect on coverage.

131.   Had N & J Group properly complied with its aforementioned duties, the insurer Defendants would have had no basis to deny coverage or to leave their insureds' exposed to an excess judgment against them personally.

132.   Because of N & J Group's negligence in negotiating, advising, and placing the insurance coverage on behalf of Harmat and 38 Chris Craft LLC, the insureds and Plaintiff have suffered significant harm.  The insureds were forced to secure personal counsel and defend themselves in litigation, resulting in a consent judgment in the amount of $66,030,000.00, plus interest.

WHEREFORE, the Plaintiffs demand judgment against N & J Group, LLC, for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demand trial by jury of all issues triable as of right by a jury.

### COUNT VIII
### PROFESSIONAL NEGLIGENCE CLAIM AGAINST GLOBAL MARINE INSURANCE AGENCY, INC. ARISING OUT OF PLACEMENT OF HUET POLICY

133.     The Plaintiff incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

134.     This claim is made in the alternative.  As explained above, Plaintiff alleges that the insurer entities (the YachtInsure entities and Aspen American Insurance Company) wrongfully denied coverage and refused to defend their insured, the Estate of Huet.  Coverage should have been afforded for the subject accident.  Under Florida's so-called "anti-technical" statute, which is "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss," the insurer entities had no basis to deny coverage for the Subject Accident. *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 898 (11th Cir. 2023).  The insurer entities denied their insureds coverage and refused to defend them on the grounds that "an unapproved operator captaining the Vessel at the time of the Incident."  But these entities knew that the separate Harmat Policy specifically listed "Randy Harmat" as the operator of the Subject Vessel prior to the Subject Accident.  The insurer entities cannot seriously contend that they were unaware that Harmat—a co-owner of the vessel and an operator listed on the separate policy issued by YachtInsure—would operate the subject vessel.  This is certainly not a valid basis to deny coverage or a defense.  That said, in the event that coverage is denied on this basis, that denial of coverage is due to failures on the part of the insureds' insurance broker.

135.     At all times material, Global Marine Insurance Agency, Inc. ("Global Marine"), in its capacity as an insurance broker, was responsible for procuring sufficient and adequate

yacht insurance for Huet.  As an insurance broker, Global Marine had a duty to ensure that Huet had the appropriate insurance coverage and that its application was submitted to ensure the existence of coverage.  *See*, *e.g.*, *Caplan v. La Chance*, 219 So.2d 89, 90 (Fla. 3d DCA 1969). *See also Frenz Enter., Inc.*, 696 So.2d at 872 (third party may seek to recover against tortfeasor's insurance broker after being successful in its action against tortfeasor).  This duty is not derived solely from Global Marine's contractual obligations to Huet, but is also a duty sounding in tort, and arising from Global Marine's undertaking to procure insurance. *See Sheridan v. Greenberg*, 391 So.2d 234 (Fla. 3d DCA 1980).  Indeed, under Florida's common law, insurance brokers owe insureds a fiduciary duty. *See Southtrust Bank v. Exp. Ins. Serv., Inc.*, 190 F. Supp. 2d 1304, 1308 (M.D. Fla. 2002); *Wachovia Ins. Servs., Inc. v. Toomey*, 994 So.2d 980, 989 (Fla. 2008).  Moreover, Florida law recognizes that a third-party victim may assert a cause of action *directly* against a tortfeasor's insurance broker. *See Hamer v. Kahn*, 404 So.2d 847 (Fla. 4th DCA 1981); *see also Frenz Enter., Inc*., 696 So.2d at 872 (third party may seek to recover against tortfeasor's insurance broker after being successful in its action against tortfeasor).

136.    In the Coblentz Agreement, the Estate of Huet assigned all claims it might have against any "broker" involved in placing the subject yacht insurance, including Global Marine, to Plaintiff in this action.

137.    Global Marine knew or reasonably should have foreseen that the failure to exercise reasonable care in any of its duties as an insurance broker to procure insurance on behalf of its insureds created a broad zone of risk.

138.    Upon information in belief, Global Marine advised and participated in the completion of the insurance application and failed to advise its insured properly regarding the completion of the application.  Global Marine did not properly explain what information needed to be provided in this section of the application or its effect on coverage.

139.    Had Global Marine properly complied with its aforementioned duties, the insurer Defendants would have had no basis to deny coverage or to leave their insureds' exposed to an excess judgment against them personally.

140.    Because of Global Marine's negligence in negotiating, advising, and placing the insurance coverage on behalf of Huet, the insureds and Plaintiff have suffered significant harm. The Estate of Huet was forced to secure personal counsel and defend themselves in litigation, resulting in a consent judgment in the amount of $66,030,000.00, plus interest.

WHEREFORE, the Plaintiffs demand judgment against Global Marine, for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demand trial by jury of all issues triable as of right by a jury.

## DEMAND FOR JURY TRIAL

The Plaintiff further demands trial by jury of all issues triable as of right by a jury.

Dated: August 23, 2024.                              Respectfully Submitted,

**PODHURST ORSECK, P.A.**
Counsel for Plaintiff
One Southeast 3rd Avenue, Suite 2300
Miami, Florida 33131
(305) 358-2800 / Fax (305) 358-2382


By:  /s/Steven C. Marks
       STEVEN C. MARKS
       Fla. Bar No. 516414
       smarks@podhurst.com
       KRISTINA M. INFANTE
       Fla. Bar No. 112557
       kinfante@podhurst.com