**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**KAREN NISSIM, as Personal Representative
of the Estate of Aaron Hirschhorn, deceased,
on behalf of herself and all potential
beneficiaries and heirs**,

    Plaintiff,

vs.   CASE NO. 1:24-cv-23211-JB

**YACHTINSURE SERVICES, INC.,** *et al.*,

    Defendants.
_____/

**JOINT MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

COME NOW the Defendants, YACHTINSURE SERVICES, INC., YACHTINSURE LTD., N & J GROUP, LLC, CLEAR BLUE SPECIALTY INSURANCE COMPANY, GLOBAL MARINE INSURANCE AGENCY, INC.,[1] and ASPEN AMERICAN INSURANCE COMPANY, by and through their respective undersigned attorneys, pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of Florida, as well as this Court's Order in Cases with Multiple Defendants dated August 26, 2024 [ECF No. 6], and files this their Joint Motion to Dismiss, and incorporated Memorandum of Law, and further thereto would respectfully state as follows:

---

[1] Specialty Program Group, LLC is the proper party in interest. Specialty Program Group, LLC purchased Global Marine Insurance Agency, Inc.'s assets and operates Global Marine Insurance Agency as a division of Specialty Program Group.

1

**MEMORANDUM OF LAW**

Plaintiff brought this action to determine the enforceability of two *Coblentz* agreements for $66 million. The settlement follows a boating accident in Biscayne Bay in which Plaintiff has alleged Aaron Hirschhorn operated a motorized surfboard and collided with the insured vessel. It has been alleged that there were two policies of marine insurance in place on the 2018 36 ft Christ Craft vessel named "CAPRICE" (hereinafter "the Vessel") at time of the incident on March 28, 2021 (hereinafter "the Incident"). Following arbitration and/or litigation between the Plaintiff, KAREN NISSIM (hereinafter "NISSIM"), and the insureds under both policies, the Plaintiff claims she obtained a consent judgment and assignment of rights against both insurers, CLEAR BLUE SPECIALTY INSURANCE COMPANY (hereinafter "CLEAR BLUE") and ASPEN AMERICAN INSURANCE COMPANY (hereinafter "ASPEN"), in exchange for a covenant not to execute against either insured – this type of arrangement is what is commonly known as a *Coblentz* agreement.

Thereafter counsel for the Plaintiff filed the instant matter on August 23, 2024, seeking to enforce those *Coblentz* agreements against CLEAR BLUE and ASPEN,[2] or in the alternative, bringing claims of professional negligence against the broker involved in the placement of each policy, N & J GROUP, LLC (hereinafter "N & J"), and GLOBAL MARINE INSURANCE

---

[2] The Plaintiff also seeks to enforce the *Coblentz* agreements against YACHTINSURE SERVICES, INC. and YACHTINSURE LTD., whom the Plaintiff refers to as "insurers." Movants note that, in a related state court action, YACHTINSURE SERVICES, INC. and YACHTINSURE LTD. (hereinafter "the YACHINSURE Defendants") argued that they were managing general agents acting as underwriting and claims handling agents. *See Nissim v. YachtInsure Services, Inc. et al.*, Case No. 2023-014276-CA-01, Filing # 173723647, at 1 (Fla. 11th Jud. Cir. May 22, 2023) (arguing that they are not insurers based on the policy which was attached to the Complaint).

AGENCY, INC (hereinafter "GLOBAL"). For reasons discussed more fully below, the Plaintiff's claims are premature and or subject to dismissal on other grounds.

## RELEVANT FACTS

1. A true and correct copy of ASPEN Policy No. ASU00879400 (hereinafter "the ASPEN Policy") was previously filed as ECF No. 1-1.

2. The ASPEN Policy lists one Named Insured: Eugenio Martinez Huet, with a policy period covering June 9, 2020 to June 9, 2021.

3. Mr. Huet passed away on or about January 20, 2021.

4. Plaintiff has alleged that GLOBAL acted as the insured's broker in procuring the ASPEN Policy. [ECF No. 1, at ¶135].

5. A true and correct copy of CLEAR BLUE Policy No. CE91-00061-00 (hereinafter the CLEAR BLUE Policy") was previously filed as ECF No. 1-2.

6. The CLEAR BLUE Policy lists one Named Insured: Chris Craft Launch LLC BO Randy Harmat, with a policy period covering February 12, 2021 to February 12, 2022.

7. Plaintiff has alleged that N & J GROUP acted as the insured's broker in procuring the CLEAR BLUE Policy. [*Id*., at ¶126].

8. Plaintiff has alleged that, at the time of the Incident on March 28, 2021, the Vessel was owned by both the Estate of Huet and/or Mr. Harmat, and that Mr. Harmat was operating the Vessel. [*See id*, at ¶¶'s 1-4].

9. Plaintiff alleges that thereafter she brought suit against the Estate of Huet, Chris Craft Launch, LLC, and Harmat, claims which were later resolved via arbitration and consent judgements [*Id*, at ¶8], and that she later entered into *Coblentz* Agreements with the Estate of Huet,

3

Christ Craft Launch, LLC, and Harmat for $66 million. [*Id*, at ¶¶'s 40-43]

    10.    The instant matter was filed on August 23, 2024.

    11.    Plaintiff brought the following claims:

> Count I: Claim Against YACHTINSURE SERVICES, INC. to Enforce the Consent Judgement Against the Estate of Huet
>
> Count II: Claim Against YACHTINSURE LTD. to Enforce the Consent Judgement Against the Estate of Huet
>
> Count III: Claim Against ASPEN to Enforce the Consent Judgement Against the Estate of Huet
>
> Count IV: Claim Against YACHTINSURE LTD. to Enforce the Consent Judgement Against Harmat and 38 Christ Craft Launch, LLC.
>
> Count V: Claim Against YACHTINSURE SERVICES, INC. to Enforce the Consent Judgement Against Harmat and 38 Christ Craft Launch, LLC.
>
> Count VI: Claim Against CLEAR BLUE to Enforce the Consent Judgement Against Harmat and 38 Christ Craft Launch, LLC.
>
> Count VII: Professional Negligence Claim Against N & J GROUP Arising out of Placement of Harmat Policy.
>
> Count VIII: Professional Negligence Claim Against GLOBAL Arising out of Placement of Huet Policy.

*See* ECF No. 1.

    12.    The Plaintiff asserts that ASPEN and CLEAR BLUE wrongfully denied coverage and defense under each Policy. [*Id*., at ¶¶'s 50, 62, 74, 86, 99, 112].

## I.    <u>LEGAL STANDARD ON A MOTION TO DISMISS</u>

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bohringer v. Bayview Loan*

*Servicing, LLC*, 141 F. Supp. 3d 1229, 1231 (S.D. Fla. 2015) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations omitted). Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citation and alteration omitted).

A defendant may raise a statute of limitation defense in a motion to dismiss for failure to state a claim "when the complaint shows on its face that the limitation period has run." *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc*. 595 F.Supp.2d 1253, 1280 (M.D. Fla. 2009); *Avco Corp. v. Precision Air Parts, Inc*., 676 F.2d 494, 495 (11th Cir. 1982); *Swedberg v. Goldfinger's South, Inc*., 338 So.3d 332 (Fla. 3d DCA 2022); *Nationstar Mortg., LLC v. Sunderman*, 201 So.3d 139 (Fla. 3d DCA 2015); *Gen. Motors Acceptance Corp. v. Thornberry,* 629 So.2d 292, 293 (Fla. 3d DCA 1993) ("Where, as here, the statute of limitations defense appears on the face of the complaint, it is permissible to assert the statute of limitations defense by motion to dismiss."); *accord Forbes v. Lehner*, 151 So.3d 31 (Fla. 3d DCA 2014); *Alexander v. Suncoast Builders, Inc*., 837 So.2d 1056 (Fla. 3d DCA 2002). "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint'

5

that the claim is time-barred." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004). A legal issue surrounding a statute of limitations question is an issue of law. *Fox v. Madsen*, 12 So. 3d 1261, 1262 (Fla. 4th DCA 2009).

Additionally, a "motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is a motion challenging the subject matter jurisdiction of the court." *Spring Air Int'l, LLC v. R.T.G. Furniture Corp.*, No. 8:10-cv-1200-T-33TGW, 2010 WL 4117627, at *1 (M.D. Fla. Oct. 19, 2010). "Federal courts are ones of limited jurisdiction; in order to establish a claim in federal court, the plaintiff must display complete diversity or raise a question of federal law." *Id*. Motions to dismiss for lack of subject matter jurisdiction may attack jurisdiction facially or factually. *Id*. "Facial attacks on the complaint require the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).

"Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 1529 (internal quotation marks omitted). Courts are free to weigh the evidence and facts as they appear when factual attacks are asserted as a challenge to the subject matter jurisdiction over a Complaint. *Id.* "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

## II.     SUMMARY OF THE ARGUMENTS PUT FORTH BY CLEAR BLUE, ASPEN, AND YACHTINSURE

The Complaint alleges that NISSIM and each of the insureds – the Estate of Huet under

the ASPEN Policy and Harmat/Christ Craft Launch LLC under the CLEAR BLUE Policy – entered into a *Coblentz* agreement for $66 million, but the Complaint fails to allege (and indeed cannot allege) that there had previously been a determination of either ASPEN's or CLEAR BLUE's liability. Because an allegation of bad-faith ripens into a justiciable action only after a determination of the insurer's liability,[3] the insurers ASPEN and CLEAR BLUE respectfully urge the Court to grant their motion to dismiss per Rules 12(b)(1) or (6) of the Federal Rules of Civil Procedure. Although the YACHTINSURE Defendants are not insurers (they merely acted as the underwriting and claims handling agents for first ASPEN and then CLEAR BLUE), they join in the present motion because the claims against them are insufficient as pleaded.

### i. THE COMPLAINT SHOULD BE DISMISSED BECAUSE NISSIM IS NOT ENTITLED TO RECOVER AN EXCESS JUDGMENT

In a departure from Florida law, the Complaint impermissibly seeks to recover an excess judgment without having proven or established bad faith. Indeed, NISSIM apparently seeks this relief before even establishing coverage under the ASPEN or CLEAR BLUE Policies. Count III and VI explicitly seek to recover excess judgments against ASPEN and CLEAR BLUE, alleging "Plaintiff is entitled to recover the full extent of the *excess* Consent Judgment," and then in the "Wherefore" clause, NISSIM asks "for all damages available, including the full extent of the Consent Judgment" without alleging the insurers acted in bad faith or first securing a determination of the insurers' liability. [*See* ECF No. 1, at ¶¶82, 121 (emphasis added).][4] Plaintiff seeks the same

---

[3] For purposes of this motion, and without waiving their rights to assert arguments based on the choice of law clause contained in either Policy, CLEAR BLUE and ASPEN assert that the Plaintiff's claims are insufficient as pleaded.

[4] Count III is plead against ASPEN and Count VI is plead against CLEAR BLUE, the quoted allegations are materially identical in the respective counts.

relief against the YACHTINSURE Defendants in Counts I, II, IV, and V.

Under Florida law, "absent a showing of bad faith, a judgment cannot be entered against an insurer in excess of its policy limits." *State Farm Mut. Auto. Ins. Co. v. Horkheimer*, 814 So. 2d 1069, 1071 (Fla. 4th DCA 2001) (collecting cases). Indeed, the Florida Supreme Court clarified this principle in *Perera v. U.S. Fid. & Guar. Co.*, which expressly held that enforcement of a *Coblentz* agreement in excess of policy limits is only possible if: (1) the insurer wrongfully refused to defend, and (2) acted in bad faith. 35 So. 3d 893, 900 (Fla. 2010) (explaining that a *Coblentz* agreement was only enforceable in excess of the policy limits where the insurer "wrongfully refuses to defend and acts in bad faith."); *see also Shook v. Allstate Ins. Co.*, 498 So. 2d 498 (Fla. 4th DCA 1986). "[T]he absence of a ripe bad-faith claim prohibits adjudicating" a *Coblentz* action. *Merique v. Progressive Select Ins. Co.*, No. 8:17-cv-1937, 2017 WL 4410186, at *1 (M.D. Fla. Oct. 4, 2017). And "a bad-faith claim requires a determination of both the insurer's liability and the insured's damages." *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000) (citing *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289 (Fla. 1991)).

Judge Steven Merryday articulated the same concept when discussing the "triptych"[5] process inherent to a *Coblentz* agreement:

> [A] *Coblentz* agreement generates three actions. First, the injured third party sues the insured. After the insurer refuses to defend the insured, the insured settles with the third party. This settlement, which often results in a consent judgment, establishes the insured's damages. In consideration for the third party's agreeing not to attempt execution on the judgment, the insured assigns to the third party the insured's breach-of-insurance-policy claim, the insured's bad-faith claim, or both. Second, the third party sues the insurer and requests a declaratory judgment that the insurance policy covers the claim in the first action. Of course, the insurer is indispensable to, and necessarily knows about, this action. If successful, the

---

[5] *See Richard McKenzie & Sons, Inc.*, 326 F. Supp. 3d at 1337.

> declaratory-judgment action establishes the insurer's liability. Third, the third party sues the insurer for bad faith and cites the *Coblentz* agreement and the action that establishes the insurer's liability. On this occasion, Progressive explains that Merique never sued for a declaratory judgment and never established Progressive's liability.

*Merique v.* 2017 WL 4410186, at *1 n.2 (dismissing claim for "failure to provide coverage and defense" because, although "omitting the phrase 'bad faith,' the complaint … appears to allege [an excess judgment] in damages").

Numerous other courts are in accord. *See Lewis v. Allied World Spec. Ins. Co.*, No. 20-cv-20677, 2023 WL 2770538, at *8 (S.D. Fla. Apr. 4, 2023) (dismissing claim under *Coblentz* agreement which purported to seek damages in excess of policy limits) (Altman, J.); *Kehle*, 2019 WL 1429674, at *4-6 (dismissing "breach of contract – duty to defend" and "breach of contract – duty to indemnify" claims which were asserted pursuant to a *Coblentz* agreement but sought amounts above policy limits); *Travelers Indem. Co. v. Attorney's Title Ins. Fund, Inc.*, No. 2:13-cv-670, 2015 WL 1310756, at *6-7 (M.D. Fla. Mar. 23, 2015) (explaining that Florida law requires a finding of bad faith to recover a *Coblentz* agreement in excess of policy limits, which was premature pending a determination of coverage).

Here, the Complaint alleges bad faith while also acknowledging there has not yet been a determination as to coverage under either Policy. Nevertheless, NISSIM improperly alleges entitlement to the "excess Consent Judgment" which is in excess of the limits under the ASPEN and CLEAR BLUE policies, specifically asking the Court to enforce "the full extent of the Consent Judgment" against the insurers. [ECF No. 1, at ¶84, 123]. Thus, like *Merique*, *Kehle*, *Attorney's Title*, and *Lewis*, Nissim's failure to assert bad faith is fatal and requires dismissal of the Complaint. *See also Govt. Emps. Ins. Co. v. Prushansky*, No. 12-80556-CIV, 2012 WL 6103220, at *4 (S.D.

9

Fla. Dec. 6, 2012) ("It is only through acts constituting bad faith that an insurer is obligated to pay in excess of the policy limits").

Considering that the Plaintiff's claims for an excess judgment are unripe, the Court "should 'dismiss it without prejudice rather than abate or stay the claim.'" *Lewis*, 2023 WL 2770538, at *9 (quoting *Babilla v. Allstate Ins. Co.*, 2020 WL 6870610, at *1 (M.D. Fla. Aug. 27, 2020)). "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Cowan v. Provident Life & Accident Ins. Co.*, 2018 WL 7577756, at *2 (S.D. Fla. Nov. 28, 2018). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Properties, Inc.*, 121 F.3d at 589; *see also Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) ("Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes.")

Adhering to the ripeness doctrine, the majority of courts in the Eleventh Circuit have held that dismissal is the appropriate remedy for an unripe bad faith case. *See Lewis*, 2023 WL 2770538, at *9; *see also, e.g.*, *Choi v. Ace Am. Ins. Co.*, 2022 WL 1199645, at *2 (S.D. Fla. Feb. 17, 2022) ("To be sure, support for dismissal of a premature bad faith claim without prejudice, rather than abatement, is legion." (collecting cases)); *Poltar v. LM Gen. Ins. Co.*, 473 F. Supp. 3d 1341, 1347 (M.D. Fla. 2020) ("Plaintiffs' bad faith claim is not ripe, and this Court lacks jurisdiction over it. Count II of the Complaint will be dismissed without prejudice for lack of subject matter jurisdiction.") (cleaned up); *Dandeneau v. Hanover Ins. Co. o/b/o All my Sons Moving & Storage of W. Palm Beach, Inc.*, 476 F. Supp. 3d 1280, 1282–83 (S.D. Fla. 2020) ("Under Florida law, the

10

proper course of action for premature third-party claims is to dismiss without prejudice."); *Bele v. 21st Century Centennial Ins. Co.*, 126 F. Supp. 3d 1293, 1297 (M.D. Fla. 2015) ("[T]he determination of liability and the total amount of damages suffered in the underlying contract claim have not been determined. Thus, as it now stands, there is no actual and definite controversy as [t]he Declaratory Judgment Act does not permit a present attempt to quantify an amount of damages for a future bad faith claim because such a declaration does not resolve the entire controversy of whether bad faith occurred. Accordingly, Count III will be dismissed with prejudice." (cleaned up)); *Novak v. Safeco Ins. Co. of Ill.*, 94 F. Supp. 3d 1267, 1269 (M.D. Fla. 2015) (denying motion for leave to amend the complaint because the "Plaintiffs' bad faith claim is not yet ripe and the Court would be required to dismiss the claim without prejudice for want of subject-matter jurisdiction").

### III. SUMMARY OF THE ARGUMENTS PUT FORTH BY N & J GROUP AND GLOBAL

This case involves, in part, claims for professional negligence asserted against N & J GROUP and GLOBAL, wherein N & J GROUP (allegedly) functioned as the broker for the CLEAR BLUE Policy and GLOBAL (allegedly) functioned as the broker for the ASPEN Policy. Crucially, the Plaintiff's claims against the insurance brokers are stated only "*in the alternative*." [ECF No. 1, ¶¶ 125, 134]. If she does not recover from the insurers, NISSIM wants to proceed with negligence claims against the insurance brokers. But, if this Court finds coverage was erroneously denied by the insurers, NISSIM would have no claims against the insurance brokers. Thus Counts VII and VIII, for professional negligence against N & J GROUP and GLOBAL, respectively, are entirely contingent on uncertain future events; the claims are not ripe as the

Plaintiff has failed to secure the requisite final judicial determination as to coverage under the insurance policy at issue, warranting dismissal. In addition, the professional negligence claim against GLOBAL should be dismissed because it is too conclusory and the claim against N & J GROUP should be dismissed with prejudice because the claim is time-barred as the statute of limitations for asserting a professional negligence claim against N & J has expired.

      **i.**     **NISSIM'S FIRST PARTY CLAIM FOR NEGLIGENCE AGAINST THE BROKERS IS PREMATURE**

Pursuant to *Blumberg v. USAA Cas. Ins. Co*., 790 So. 2d 1061, 1065 (Fla. 2001) and its progeny, a claim against an insurance broker is barred unless and until coverage issues are resolved. Because coverage issues have not yet been resolved, a claim against N & J GROUP and GLOBAL, insurance brokers, is not yet ripe and is subject to dismissal.

In *Blumberg*, the Florida Supreme Court held that an insured's cause of action against its agent for failure to procure adequate insurances accrues *only*, if, ever, when the proceeding against the insurer becomes final. *Id*. The logic behind the *Blumberg* rule is clear—the insured is not permitted to maintain inconsistent positions; against the insurer, the insured cannot argue that the insured is *covered* under the policy, while simultaneously asserting that its insurance broker negligently procured insurance because the policy *does not cover* the insured. *See id.* As applied here, NISSIM's "alternative" claims, which are inconsistent with its claims against the insurers, cannot thereby be maintained. *See id.* For example, if a claim against the insurer ASPEN succeeds, a claim against the broker GLOBAL will never exist. *See id.*

In *Thomas Mach., Inc. v. Everest Nat'l Ins. Co*., the insured Thomas Machinery, Inc. ("Thomas") sued its insurer Everest National Insurance Company ("Everest") for allegedly

12

improperly denying coverage. 2020 U.S. Dist. LEXIS 90775, *1 (S.D. Fla. May 21, 2020) (Altman, J.). In that same suit, Thomas also sued its broker Wilson, Washburn & Forster, Inc. ("Wilson") in the "[a]lternative[,]" contending that, "*if* the insurance policy did not cover its claim, then Wilson should be liable for failing to procure adequate coverage on its behalf." *Id*. at *1-2 (emphasis added). Thus, the facts of *Thomas* are materially like the facts of this case, where NISSIM is suing insurers for wrongfully denying coverage and brokers, in the alternative, in the event her suit against the insurers fails.[6]

With these facts in hand, this Court concluded that it "must…fully adjudicate the coverage question before it can reach Thomas' claim that Wilson procured inadequate coverage." *Id.* at *11. Thomas "may proceed to a separate trial against Wilson *only* if it is first unsuccessful in its action against Everest." *Id*. at *12 (emphasis in original). "Thomas' claims against Everest can result in one of two possible outcomes: If Thomas prevails, then the case against Wilson is mooted; if Thomas loses, then Thomas will file a separate action against Wilson, in which Wilson will have a full and fair opportunity to protect its own interests." *Id*. at *14. Simply swap the names of the parties in *Thomas* for the names of the parties here, and it becomes clear that NISSIM's case against GLOBAL and N & J GROUP, brokers, cannot now proceed. *See id*.

### ii. NISSIM'S THIRD-PARTY CLAIMS AGAINST THE BROKERS ARE ALSO PREMATURE

In addition to a first-party claim, NISSIM seemingly brings a third-party claim against the

---

[6] Thomas was the named insured and did not assign his rights to a third-party. Here, Mr. Huet and Mr. Harmat assigned their first-party rights to the Estate of Hirschhorn (for which NISSIM is the personal representative). This wrinkle is not dispositive because NISSIM stands in the shoes of Mr. Huet and Mr. Harmat. NISSIM's separate third-party claim will be discussed *infra*.

13

brokers for their failure to procure insurance. *See e.g.* ECF No. 1, at ¶135 (claiming that "Florida law recognizes that a third-party victim may assert a cause of action directly against a tortfeasor's insurance broker"). Even if NISSIM brings third-party claims, the third-party claims are also premature. In *Floyd v. Endurance Am. Specialty Ins. Co*., the Court explained:

> [T]he Court is not persuaded by Plaintiff's argument that *Blumberg* does not apply because this is a third-party claim, not a first-party claim. The Broker Defendants respond that this is actually a first-party claim, because Plaintiff is standing in the shoes of the policyholder (Andrews) to sue its insurers pursuant to the settlement agreement in the underlying medical malpractice litigation. The Court agrees with the Broker Defendants on this point, but regardless of how the claim is characterized, it would not change the application of *Blumberg* to this case because Plaintiff is still asserting claims against insurance brokers that are entirely contingent on the outcome of claims against insurers.

2023 U.S. Dist. LEXIS 99632, *17-18 (N.D. Fla. June 5, 2023) (Wetherell, J.).

Other courts have agreed that regardless of whether a claim against a broker is a first-party claim, third-party claim, or both, the case against a broker must wait until the coverage determination is made. *See e.g. N. Assur. Co. of Am. v. Sante Teo, Inc.,* 2012 U.S. Dist. LEXIS 199743, *14-15 (S.D. Fla. April 4, 2012) (Altonaga, J.) ("the holding in *Blumberg* dictates that only when there has been a determination as to coverage, or a lack thereof, will Third-Party Plaintiffs' cause of action against Rutherford begin to accrue" because "a cause of action against the agent accrues only on an established lack of coverage, combined with actual resulting damages. It cannot be known whether an agent failed to obtain coverage until it is first decided that there is no coverage"); *Allstate Ins. Co. v. Richard Zehr Constr., Inc.,* 2006 U.S. Dist. LEXIS 72006, *6-7 (M.D. Fla. Oct. 2, 2006) (Whittemore, J.) (the "third party claim [is] contingent upon an adjudication that Allstate's coverage does not extend to the vehicle involved in the subject accident. Therefore, because [the third-party claim is] contingent upon the occurrence of an event

that may or may not occur, it is appropriate to dismiss" the claim).

### iii. DISMISSAL, RATHER THAN ABATEMENT, IS THE APPROPRIATE REMEDY

NISSIM, like some other plaintiffs suing insurance brokers, may seek abatement over dismissal. However, such an argument would be mistaken. The "overwhelming weight of authority favors dismissal over an abatement." *Thomas Mach., Inc.*., 2020 U.S. Dist. LEXIS 90775, at *8 n.2.

> [F]lorida courts have found that the appropriate remedy in these circumstances is dismissal, not abatement. In particular, more than a decade after the Florida Supreme Court's decision in *Blumberg,* a Florida intermediate appellate court held that, because an insured's 'premature' claim against its agent 'will not be cured by the passage of time,' but 'will only be cured by a finding that [the insured's] claim is not covered by the [insurance] policies, the appropriate remedy is a dismissal…without prejudice, rather than an abatement.

*Id.* at 7 (quoting *Wells Fargo Ins. Servs. USA, Inc. v. Blackshear*, 136 So. 3d 1235, 1239 (Fla. 2d DCA 2014)).[7]  Moreover, "public policy and judicial economy concerns actually favor dismissal instead of an abatement or stay…[because] filing these premature claims forces the insurance agent to file a response and prompts the parties to litigate what is the appropriate remedy pending adjudication of the underlying action. This is waste of the court's and the parties' resources." *Id.* at *17.

Lastly, "there is a serious constitutional question regarding whether this Court has jurisdiction over [NISSIM's] premature claim." *Id.* at *17-18. NISSIM's claim is not yet ripe and

---

[7] The Second District Court of Appeal in *Blackshear* has resolved the issue: this Court must dismiss this action without prejudice. With the *Blackshear* decision directly on point and without any split among the District Courts of Appeal, the *Blackshear* decision is binding on all Florida trial courts. *See Pardo v. State,* 596 So. 2d 665, 666 (Fla. 1992) ("in the absence of interdistrict conflict, district court decisions bind all Florida trial courts.").

therefore, even if a state court would abate rather than dismiss this case, *this* Court must dismiss this case. *See id*. at *18 (the Court "favors the outcome that does not risk running afoul of Article III of the Constitution").

## IV. ARGUMENTS PUT FORTH BY GLOBAL ALONE

Even if NISSIM's claims are not premature (or abatement is found to be the proper remedy), NISSIM fails to state a claim and her complaint should accordingly be dismissed for this separate reason. There are *zero* specific allegations regarding how GLOBAL did anything wrong. *See Rager v. MSC Crises, S.A.*, 2023 U.S. Dist. LEXIS 191766 (S.D. Fla. Oct. 25, 2023) (plaintiff must allege "how" a defendant breached his duty of care to state a negligence claim). Count VIII is entirely conclusory in nature: "Upon information and belief, Global Marine…failed to advise its insured properly regarding the completion of the [insurance] application." [ECF No., at ¶138]. The policy of insurance lists "Eugenio Martinez Huet" as the "Named Insured," states that the "Operator" was "Eugenio Martinez Huet," and lists "N/A" as the "Additional Insured."  Compl. Exhibit A. What advice NISSIM asserts GLOBAL should have provided to Mr. Huet so he would further understand that the personal policy of insurance covered him alone is entirely unclear.

## V. ARGUMENTS PUT FORTH BY N & J GROUP ALONE

Should this Court determine that Plaintiff's claims against N&J GROUP is ripe (which it is not), then Count VII should be dismissed because it was filed well after the expiration of Florida's Statute of Limitation governing professional negligence actions. Except in matters governed by the federal Constitution or by Acts of Congress, federal courts must apply the law of the forum state, including its statute of limitations. *Reisman v. Gen. Motors Corp.,* 845 F.2d

289, 291 (11th Cir. 1988). Florida law provides that a professional negligence action must be brought within two years from the time the cause of action is discovered or should have been discovered with the exercise of due diligence. § 95.11(4)(a), *Fla. Stat*.

The last element constituting a cause of action for professional negligence or breach of fiduciary duty is the occurrence of damages. *See Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003) (traditionally, a cause of action based on negligence comprises four elements: duty, breach, proximate cause, and actual loss or damage) (citation omitted). Generally, the statute of limitations attaches once an injury is sustained as a result of another party's wrongful actions. *Mikhaylov v. Bilzin Sumberg Baena Price & Axelrod LLP,* 346 So.3d 224, 227 (Fla. 3d DCA 2022). However, "[i]t is not material that all the damages resulting from the act shall have been sustained at that time and postponed by the fact that the actual or substantial damages do not occur until a later date. the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date." *Id.*

Here, Plaintiff alleges in Count VII that their damages are rooted in the denial of coverage and that the "insureds were forced to secure personal counsel and defend themselves in the litigation, resulting in a consent judgment in the amount of $66,030,000.00 plus interest." [ECF No. 1, at ¶132]. Therefore, based on the allegations in the Complaint, the statute of limitations for this matter began to run on May 19, 2021, when "correspondence enclosing coverage denial letter were mailed to the Plaintiff detailing the coverage defenses raised by the insurers." [ECF No., at ¶35]. Therefore, the statute of limitations for the negligence claim expired on May 19, 2023, two years after the denial letters were issued. Plaintiff, however, did not assert a claim for

professional negligence against N & J for the first time until the filing of the instant Complaint on August 23, 2024 – fifteen (15) months after the expiration of the statute of limitations.

This Court may consider a statute of limitations defense in this matter on a Motion to Dismiss as the Complaint, on its face, demonstrates that the statute of limitations has run. *Jabil Circuit, Inc*. 595 F.Supp.2d at 1280. Here, the facts as alleged by the Plaintiff, if taken as true, demonstrate that Count VII against N & J is time-barred, warranting dismissal with prejudice. *See* § 95.11(4)(a), *Fla. Stat*.

## **CONCLUSION**

For the reasons stated above, the Complaint must be dismissed.

WHEREFORE, the Defendants YACHTINSURE SERVICES, INC., YACHTINSURE LTD., N&J GROUP, LLC, CLEAR BLUE SPECIALTY INSURANCE, GLOBAL MARINE INSURANCE AGENCY, INC. and ASPEN AMERICAN INSURANCE COMPANY respectfully request that this Court enter an order dismissing the Complaint, and to award any and all such further relief as it may deem just and prior in the premises.

Dated: November 1, 2024

Respectfully submitted,

| | |
|---|---|
| THE GOLDMAN MARITIME LAW GROUP<br>*Attorneys for Aspen American Ins. Co.*<br>401 East Las Olas Boulevard<br>Suite 1400<br>Fort Lauderdale, FL 33301<br>Tel (954) 356-0460<br>Fax (617) 608-5128<br>Cel (617) 817-1887<br><br>By: /s/ Jacqueline L. Goldman<br>JACQUELINE L. GOLDMAN<br>FLA. BAR. NO. 1005573 | COLE, SCOTT & KISSANE, P.A.<br>*Counsel for Defendant N & J GROUP, LLC*<br>222 Lakeview Avenue, Suite 500<br>West Palm Beach, FL 33401<br>Telephone (561) 383-9200<br>By: /s/ Jeremy F. Goldstein<br>JONATHAN VINE<br>Florida Bar No.: 10966<br>JEREMY F. GOLDSTEIN<br>Florida Bar No.: 1022687<br>TIFFANY J. HORNBACK<br>Florida Bar No.: 1031263 |
| */s/ Rhett C. Parker*<br>Rhett C. Parker  |  FBN 0092505  (LEAD)<br>rhett.parker@phelps.com<br>Mitchell L. McBride  |  FBN 1025234<br>mitchell.mcbride@phelps.com<br>**Phelps Dunbar LLP**<br>100 South Ashley Drive, Suite 2000<br>Tampa, Florida  33602-5315<br>P:  (813) 472-7550 | F:  (813) 472-7570<br>*Counsel for Defendant Global Marine Insurance Agency, Inc.* | /s/ John Michael Pennekamp<br>John Michael Pennekamp<br>Fla. Bar No. 983454<br>Email: jmp@fowler-white.com<br><br>FOWLER WHITE BURNETT, P.A.<br>Brickell Arch, Fourteenth Floor<br>1395 Brickell Avenue<br>Miami, Florida 33131<br>Telephone : (305) 789-9200<br>Facsimile:    (305) 789-9201<br>*Counsel for Yachtinsure Services, Inc. and Yachtinsure Ltd.* |

*/s/* AARON WARREN
**SINA BAHADORAN**
Florida Bar No. 523364
sina.bahadoran@clydeco.us
**AARON WARREN**
Florida Bar No. 96162
aaron.warren@clydeco.us
**MATTHEW WATSON**
Florida Bar No. 1031851
matthew. watson@clydeco.us
Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
T: 305.446.2646
***Counsel for Clear Blue Specialty Ins. Co.***